IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**Virginia Curran,**)
)
    Plaintiff,)
)
  v.) No. 09 C 2120
)
**JP Morgan Chase, N.A., Wesley**)
**Hardman, Official & Individ. Cap.**)
)
    Defendants.)
)

**MEMORANDUM OPINION AND ORDER**

Plaintiff Virginia Curran has brought an amended complaint against her former employer, defendant JP Morgan Chase ("Chase") and her former supervisor, defendant Wesley Hardman. In counts I-IV of the amended complaint, plaintiff alleges violations of the Age Discrimination in Employment Act of 1967 ("ADEA") against defendant Chase. In count V, plaintiff alleges that both defendants wrongfully caused her to suffer "mental stress." In count VII, plaintiff alleges breach of contract against Chase. Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), defendants have moved to dismiss counts IV, V, and VII. For the reasons that follow, I grant the motion.

I.

A motion to dismiss tests the sufficiency of a complaint, not its merits. *Gibson v. Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Although I must accept all well-pleaded allegations in the

complaint as true, to survive a motion to dismiss, the asserted claims "must be supported by facts that, if taken as true, at least plausibly suggest that the plaintiff is entitled to relief." *Pinson v. Will County State's Attorney's Office*, No. 08 C. 2284 2009 WL 1940786 at *2 (July 7, 2009)(Kendall, J.) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

II.

Defendants seek to dismiss count IV, which alleges that Chase violated ADEA by demoting plaintiff, changing her work assignments, and ultimately discharging her, on the basis that it is duplicative of counts II and III. Counts II and III allege, respectively, unlawful discharge and discrimination in the terms and conditions of employment. Plaintiff's factual allegations in support of count IV are essentially the same as those asserted in counts II and III. Because count IV indeed appears to be duplicative of counts II and III, and because plaintiff does not object to the dismissal of count IV for the purpose of consolidating her claims, I dismiss count IV of the amended complaint.

Defendants next seek to dismiss count V for "mental anguish," interpreting this count as asserting the common law tort of intentional infliction of emotional distress ("IIED").[1] In support

---

[1]Although plaintiff's awkward description of her claim as one for "mental stress" and certain of her allegations could arguably be construed as asserting *negligent* infliction of emotional distress against Chase, that interpretation is undermined by other aspects of the amended complaint. For example, plaintiff alleges

2

of dismissal, defendants argue 1) that the claim is preempted as to both defendants by the Illinois Human Rights Act ("IHRA"), 2) that the claim is preempted as to Chase by the Illinois Workers Compensation Act ("IWCA"), and 3) that the claim fails to allege facts sufficient to state a cognizable claim.

Whether a claim for the tort of intentional infliction of emotional distress is preempted by the IHRA depends on whether the duty alleged to have been breached exists independently of legal duties created by the statute. *Maksimovic v. Tsogalis*, 177 Ill.2d 511, 687 N.E.2d 21, 24 (Ill. 1997). Although tort claims that are "inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the [IHRA] itself" are preempted, *id*. at 23, "the duty not to intentionally inflict emotional distress and an employer's duty to prevent intentional infliction of emotional distress by its employees derive from common law, not statutory law." *Jimenez v. Thompson Steel Co., Inc.*, 264 F.Supp.2d 693 (N.D. Ill. 2003) (citing *Arnold v.*

---

in count V that "defendants intended to cause Plaintiff Curran emotional distress," and that "defendant [plaintiff does not specify which] was reckless in its disregard for the probability of causing plaintiff mental stress," but does not allege negligence. In her response to defendants' motion, however, plaintiff argues that "[d]efendants can be liable for infliction of mental stress if they caused the mental stress and negligently failed to prevent the mental stress," citing *Arnold v. Janssen Pharmaceutica, Inc.*, 215 F.Supp.2d 951, 956 (N.D. Ill. 2002). Plaintiff misreads *Arnold*. Properly construed, *Arnold* supports the conclusion that to the extent plaintiff's claim against Chase is based on a theory of negligence, her claim is barred by the exclusivity provisions of the IWCA. *Arnold*, 215 F.Supp.2d at 957.

3

*Pharmaceutica, Inc.*, 215 F.Supp.2d 951, 956 (N.D. Ill. 2002). To prevail on a claim of IIED, a plaintiff must show "(1) the conduct involved was "truly extreme and outrageous"; (2) the defendants intended for their conduct to inflict severe emotional distress or should have known that there was a high probability of such distress; and (3) the conduct in fact caused severe emotional distress." *Arnold*, 215 F.Supp.2d at 961 (quoting *McGrath v. Fahey*, 126 Ill.2d 78, 127 Ill.Dec. 724, 533 N.E.2d 806, 809 (1988). As I noted in *Jimenez*, the fact that the extreme and outrageous conduct a plaintiff alleges may also constitute harassment under IHRA "does not affect the viability of the tort claims alleging such conduct." 264 F.Supp.2d at 696.

Defendants cite *Garcia v. Fry* 972 F.Supp. 1133, 1140 (N.D. Ill. 1997), for the argument that plaintiff's IIED claim is preempted in its entirety. But their reliance on *Garcia* is misplaced, since that case expressly followed a line of cases in this district that interpreted the Illinois Supreme Court's decision in *Geise v. Phoenix Co. Of Chicago*, 159 Ill.2d 507, 639 N.E.2d 1273 (1994), broadly, and held claims for IIED and negligent infliction of emotional distress preempted by the IHRA. In *Maksimovic*, however, the Illinois Supreme Court clarified the proper scope of *Geise* and held that where a plaintiff alleges facts sufficient to establish "ordinary common law tort claims" that are "incidental" to conduct proscribed by the IHRA, the common law

claims are not preempted by the statute. *Maksimovic*, 687 N.E.2d at 23. Under *Maksimovic*, a plaintiff's claim for IIED is not preempted by the IHRA simply because the allegations in support of that claim overlap with allegations in support of statutory claims. In this case, plaintiff asserts acts of "harassment" by defendant Hardman in count V--specifically that he "scolded," "yelled at," and "ma[d]e fun" of her--that go beyond her allegations of discrimination. Moreover, Hardman's duty not to inflict emotional distress exists independently of the IHRA. Accordingly, plaintiff's IIED claim against Hardman is not preempted by the statute.

Plaintiff's IIED claim against Chase is a different (and more complex) story. Although plaintiff's imprecise drafting throughout the amended complaint makes it difficult, in some instances, to ascertain which defendant is alleged to have engaged in which acts, the only act or omission specifically attributed to Chase in count V is that Chase "had the ability to prevent the mental stress caused by Mr. Hartman (sic); however, failed to act." Although in some instances, "defendants" (presumably in the plural to include both Hardman and Chase) are alleged to have engaged in such harassing acts as shouting (indeed, "venomously"), Chase--a corporate entity--obviously was not the actual author of such acts. Chase's potential liability for these acts, under common law, would presumably rely on a theory of *respondeat superior.* (More on this

5

theory below.) Setting aside for a moment the allegation that Chase failed to prevent Hardman's acts, the only allegedly outrageous conduct attributed to Chase is "inextricably linked" to plaintiff's discrimination claims: that Chase discharged plaintiff because of her age. This conduct, however, is not actionable independently of the IHRA. Accordingly, plaintiff's IIED claim against Chase is preempted to the extent it relies on conduct other than Hardman's alleged harassment.

Now for *respondeat superior*. As I noted in *Jimenez*, Chase could theoretically be held liable for Hardman's conduct under this theory (assuming that conduct is itself actionable as IIED) if Hardman were alleged to have committed the offending acts within the scope of his employment. *Jimenez*, 264 F.Supp.2d at 696 (citing *Otterbacher v. Northwestern Univ.*, 838 F.Supp.1256, 1262 (N.D. Ill. 1993)). But plaintiff frustrates any potential *respondeat superior* theory with her assertion that "[t]he issue is outrageous behavior by the defendants and such outrageous conduct *was not in the scope of employment of the defendants*." Having apparently foreclosed the only avenue available under common law for holding Chase responsible for Hardman's infliction of IIED, plaintiff is precluded from pursuing a claim for IIED against Chase at all. As noted above, her remaining allegations, other than those based on Hardman's (or some other employee's) scolding and yelling, are

6

"inextricably linked" to her discrimination claim and are therefore preempted by the IHRA.[2]

In any event, count V must be dismissed against both defendants for the independent reason that the amended complaint does not "raise [plaintiff's] right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). Although plaintiff characterizes defendants' conduct as extreme and outrageous, the scant factual allegations of her amended complaint are insufficient to support this conclusion. To begin with, "in the workplace setting, courts have found that terminating an employee in violation of an anti-discriminatory statute, or harshly criticizing or insulting an employee, is not enough to constitute extreme and outrageous conduct." *McKay v. Town and Country Cadillac, Inc.*, 991 F.Supp.966, 972 (N.D. Ill. 1997) (citing *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 702-703 (7th Cir. 1993)). Although the details of the "scoldings" and "venomous" shoutings plaintiff claims to have been subjected to are unknown,

---

[2] In light of this conclusion, I need not decide whether plaintiff's IIED claim against Chase is also preempted by the IWCA. Nevertheless, I note in passing that courts in this circuit have held that the IWCA provides employers with an affirmative defense, which plaintiffs need not anticipate or "plead around" in their complaints. *Arnold v. Janssen Pharmaceutica, Inc.*, 215 F.Supp.2d 951, 956 (N.D. Ill. 2002)(citing *Doyle v. Rhodes*, 101 Ill.2d 1, 461 N.E.2d 382, 386 (1984)); *Acuff v. IBP, Inc.*, 77 F.Supp.2d 914, 922 (C.D.Ill. 1999)(IWCA exclusivity rule not jurisdictional, but rather "an affirmative defense that must be pleaded and proven by the employer"). Accordingly, the IWCA's exclusivity provisions do not appear to compel dismissal of plaintiff's IIED claim against Chase.

the limited factual material plaintiff offers does not, without more, suggest that defendants' behavior so exceeded the type of conflicts and criticisms commonly experienced in the workplace as to enter the realm of an actionable IIED claim. The tort of IIED "does not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities,'" *McGrath*, 533 N.E.2d at 809 (quoting Restatement (Second) of Torts § 46, comment *d*, at 73 (1965)), and to be actionable, the alleged conduct must be so severe as to cause distress no reasonable person can be expected to endure. *McGrath*, at 809. Despite plaintiff's conclusory allegation that she "reasonably found the behavior to be more than petty or mere insults," the amended complaint is devoid of any factual material to support this conclusion.

The only acts of harassment specifically identified in the amended complaint (as distinct from acts of discrimination, which, as noted above, are preempted by the IHRA) are that defendant Hardman––along with another individual apparently employed by Chase but not named as a defendant in this action--"publicly scolded (yelled at)" plaintiff, and that "defendants shouted venomously (at her)," and "made fun" of her. It is true that plaintiff is not required to plead the details of specific events. *Jimenez*, at 696. Nevertheless, the nature of the conduct plaintiff alleges in generic terms simply does not, without more, provide any reasonable basis for inferring that the conduct was so extreme, in the context

of plaintiff's employment, as to be actionable as IIED. In this sense, plaintiff's amended complaint is distinct from those in which dismissal under Rule 12(b)(6) was denied. For example, in *Jimenez*, the plaintiff's claims included allegations of assault, "taunting," and "touching," in the workplace. 264 F.Supp.2d at 696. Even in the absence of more detailed allegations, acts that can be described in such terms reasonably suggest conduct falling outside the realm of ordinary workplace strife. In *Arnold*, although the complaint lacked specificity regarding particular events, the plaintiff alleged a repeated pattern of sexual harassment and retaliation that spanned six years of her employment, and included allegations of inappropriate comments, gestures, and conduct by multiple male supervisors, as well as various forms of retaliation. 215 F.Supp.2d at 961.

By contrast, plaintiff's terse allegations that she was "publicly scolded for events for which she was not responsible" and "shouted at"--without any contextual clues, such as the content or frequency of the scolding, or other circumstances that would allow me reasonably to infer that the alleged acts were indeed extreme and outrageous workplace behavior--evoke conduct that has been held to fall short of IIED in *Harrison v. Chicago Tribune Co.*, 992 F.2d 697 (7th Cir. 1993). In *Harrison*, the plaintiff alleged (among many other acts of discrimination and harassment), that her employer "reprimanded [her] for no reason" and "falsely accused" her of poor

9

performance.  Id. at 703.  Unlike the plaintiffs' general description of the conduct alleged in *Jimenez* and *Arnold*, plaintiff's allegations do not reasonably suggest conduct that rises to the level of egregious workplace behavior actionable as IIED.  Even aside from the preemption issue that precludes plaintiff from pursuing her IIED claim against Chase, this additional infirmity is fatal to count V against both defendants.

Finally, defendants argue that plaintiff's breach of contract claim fails because plaintiff has not sufficiently pled the existence of a contract.  This claim (count VII of the amended complaint) contains three paragraphs of allegations.  In the first, plaintiff realleges and incorporates all prior paragraphs, none of which identifies a contract.[3]  In the second paragraph, plaintiff asserts that she had a contract with Chase and alleges details relating to the validity of that (unidentified) contract.  In the third paragraph, she alleges that "such contract obligated defendant to pay plaintiff a bonus of approximately $15,000USD on or about November 30, 2006 and that defendant has breached by refusing to pay plaintiff monies owed."  Plaintiff did not attach any contract to her complaint, nor indeed was she required to do so.

---

[3]The only previous reference to a contract is in paragraph 6 of count I (plaintiff's hostile environment claim), where she states that she "was an employee of defendant and was providing services under a contract with Defendant JP Morgan Chase").

10

In their motion to dismiss, defendants argue that no contract exists between plaintiff and Chase that would entitle plaintiff to any discretionary bonus. Defendants attach a document titled "2006 Branch Profitability Incentive Plan," which they contend is the contract referenced in plaintiff's complaint, and they argue that this document is fatal to plaintiff's breach of contract claim. Indeed, the attached document states on its face that it does not create any contractual rights for any plan participant. I agree that if this document is the "contract" plaintiff asserts in her amended complaint, her breach of contract claim fails.[4] In her response to defendants' motion, plaintiff neither concedes nor disputes that the document defendants identify is the contract on which she relies, but instead insists merely: "There was a contract." Plaintiff further asserts that she was "promised by Chase, monies if she sold specific Chase products. Plaintiff sold certain Chase products. Plaintiff has yet to be paid the approximately $15,000 owed to her by Chase for having sold certain Chase products." This response confounds, rather than clarifies the issue, but ultimately, only two conclusions can reasonably be drawn from it: either 1) the document defendants attach is, indeed, the "contract" upon which her claim rests, and plaintiff disputes

---

[4]Assuming this document is the referenced contract, I may consider it without converting defendants' motion to dismiss into a motion for summary judgment. *Venture Associates Corp. v. Zenith Data Systems*, 987 F.2d 429, 431.

the legal significance of the document, or 2) some other, unidentified contract is the source of the rights plaintiff asserts. In either event, her claim cannot proceed based on the amended complaint. As previously noted, the "2006 Branch Profitability Incentive Plan" on its face creates no contractual rights as to plaintiff, so to the extent she rests her breach of contract claim on that document, the claim is meritless. If, on the other hand, plaintiff asserts that some other contract as the basis of her claim, the amended complaint fails to give defendants reasonable notice of that claim. Accordingly, count VII of the amended complaint must be dismissed.

III.

For the foregoing reasons, defendants' motion to dismiss counts IV, V and VII of plaintiff's amended complaint is granted.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: July 16, 2009